IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANINE D. BUELL,                      Case No. 6:13-cv-01794-AA
                                           OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.

---

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
      Attorney for plaintiff

S. Amanda Marshall
Adrian L. Brown
Ronald K. Silver
United States Attorneys Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Nancy A. Mishalanie
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Janine Buell brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

In June 2010, plaintiff applied for DIB and SSI. Tr. 19, 183-93. Her applications were denied initially and upon reconsideration. Tr. 116-30. On May 9, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-69. On May 25, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19-31. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## STATEMENT OF FACTS

Born on March 4, 1966, plaintiff was 41 years old on the alleged onset date of disability and 46 years old at the time of the hearing. Tr. 30, 42, 183, 187. Plaintiff graduated from high school, attended one year of college, and obtained certification as a nursing assistant. Tr. 42, 227. She was previously employed as a food service worker, waitress, greeter, cashier/hostess, telephone answering service operator, case aid, and occupational therapy aid.

Tr. 61-62, 227. Plaintiff alleges disability as of December 31, 2007, due to fibromyalgia, depression, carpal tunnel syndrome, high blood pressure, asthma, and borderline personality disorder. Tr. 183, 193, 226.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential

Page 3 - OPINION AND ORDER

process for determining whether a person is disabled. <u>Bowen v.</u> <u>Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this

Page 4 - OPINION AND ORDER

burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, asthma, carpal tunnel syndrome, hypertension, and obesity. Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

Because she did not establish disability at step three, the ALJ continued to evaluate whether plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she may occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl, she must avoid concentrated exposure to fumes, dusts, gases, and poor ventilation, and she may no more than frequently handle and finger." Tr. 24-25.

At step four, the ALJ found that plaintiff could perform her past relevant work as a cashier, waitress, answering service operator, and case aide. Tr. 29. In the alternative, the ALJ determined at step five that despite her impairment, plaintiff could perform jobs existing in significant numbers in the national

Page 5 - OPINION AND ORDER

and local economy; such as sales attendant, cashier, and parking lot signaler. Tr. 30. As such, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not credible; (2) rejecting the lay witness testimony of Derrick Buell; (3) not including her fibromyalgia as a medically determinable severe impairment at step two; (4) under step three failing to find her presumptively disabled under listings 12.04, 12.06, and 14.09D; and (5) formulating an incomplete RFC, such that the step four and five findings were invalid.

I.    Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Page 6 - OPINION AND ORDER

The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that the "biggest issue" rendering her unable to work "is the constant pain . . . every minute of every day." Tr. 45-46. According to plaintiff, she also suffers from "mental health issues" that make it difficult for her to leave her bedroom, as well as "a stutter that make[s] [her] very nervous to speak with people." Tr. 45. In addition, plaintiff endorsed "severe back spasms," "severe depression," poor balance, "manic episode[s]," "social anxieties," asthma attacks "[s]everal times a day," "pins and needles in [her] fingers," and a recent history of psychiatric hospitalization. Tr. 45, 49-52. As for activities of daily living, plaintiff stated that she gets up at 6:30 a.m., does minimal household chores, and then watches television, "lay[s] down[,] or . . . look[s] out the window" for the remainder of the day. Tr. 55-58.

After summarizing her hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully

credible due to her failure to seek and follow prescribed treatments, her tendency to exaggerate, inconsistencies in the record, and the lack of corroborating objective medical evidence. Tr. 25-28.

Notably, the ALJ determined that plaintiff's failure to seek mental health counseling and overall "poor compliance with treatment" undermined her subjective symptom statements.[1] Tr. 26-28. Failure to seek or follow medical treatment is a clear and convincing reason to reject a claimant's credibility. Burch, 400 F.3d at 681. Nevertheless, before drawing a negative inference, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, available at 1996 WL 374186.

Here, substantial evidence supports the ALJ's conclusion. As the ALJ denoted, plaintiff repeatedly stopped taking her

---

[1] Plaintiff contends that the ALJ's reliance on her failure to seek mental health treatment or abide by her doctors' recommendations concerning her asthma and hypertension was improper because she "does not contest the ALJ's findings regarding those impairments." Pl.'s Opening Br. 20-21. Essentially, plaintiff argues that it was impermissible for the ALJ to consider any evidence of record, except for that relating to her fibromyalgia, because "[h]er primary allegation [on appeal] is that her fibromyalgia is disabling." Id. at 2, 20-21. Plaintiff ignores the fact that she applied for disability benefits based on her psychological impairments, hypertension, and asthma, and explicitly testified at the hearing that these conditions interfered with her ability to work. Tr. 45, 48-52, 226. Moreover, the ALJ's credibility determination is holistic. In other words, plaintiff cannot, in this context, preclude the Court from considering relevant and probative, albeit unfavorable, evidence by selectively circumscribing the basis of her appeal.

medications for hypertension, depression, and fibromyalgia, despite reporting that these medications were generally successful in controlling her symptoms. See, e.g., Tr. 287, 290, 294, 327; see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits). Plaintiff also failed to follow-up on a September 2010 referral from Oded Shulsinger, M.D., her treating physician, to a specialist to assess whether she suffers from carpal tunnel syndrome and fibromyalgia. Tr. 329; see also Tr. 49, 53-54 (plaintiff testifying that, nearly two years later, she still has yet to see a specialist regarding these conditions).

Plaintiff has been aware of her allegedly severe mental impairments for several years. See Tr. 48-51, 290-91, 351. Yet there is no evidence in the 362 page record reflecting any mental health treatment during the relevant adjudication period. See Tr. 351 (plaintiff reporting that she previously sought counseling in 1997 and 2005, several years before the alleged onset date). Specifically, plaintiff testified that she "was working with mental health" recently, but stopped going because she "had a disagreement with the psychiatrist." Tr. 50. Records from the mental health counseling to which plaintiff referred, from the Coos County Mental Health Department,[2] do not reflect any longitudinal treatment. Tr.

_____

[2] Records from the Coos County Mental Health Department were first submitted to the Appeals Council; the ALJ therefore did not have access to this evidence at the time of his decision. Tr. 4-

50, 344-62. Rather, plaintiff attended three sessions: in August 2010, she sat for a "screening appointment"; in September 2010, she participated in an intake interview; in October 2010, plaintiff was a "no-show"; and in November 2010, she "abruptly" terminated care with the Coos County Mental Health Department because her provider "told [her] that [they can only treat] her depression [and] not [her] fibromyalgia or pain here," and accordingly refused to prescribe her the non-psychiatric medication she requested, gabapentin. Tr. 344-62.

The only other evidence in the record relating to plaintiff's mental health treatment is from the one-time examinations. In August 2010, Gail Wahl, Ph.D., performed a "Comprehensive Psychological Assessment" on plaintiff. Tr. 293-95. The doctor noted that plaintiff was exaggerating her symptoms and made numerous inconsistent statements; she assessed no functional limitations associated with plaintiff's allegedly disabling mental impairments. Id. In March 2012, when plaintiff sought treatment for bronchitis, her provider "encouraged her to go to Coos Bay Mental Health" because she reported several situational stressors. Tr. 336-37. Plaintiff "[g]ave . . . many excuses for not going but finally promised that she would go." Tr. 336. Nevertheless, plaintiff did not seek any counseling in the intervening two-month period and indicated at the hearing that she was not currently

5, 32-35; see also Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162-63 (9th Cir. 2012) (district court required to consider new evidence submitted to the Appeals Council in evaluating whether the ALJ erred in denying benefits).

receiving psychological treatment, and had no plans to do so in the future. Tr. 49-50.

Outside of her assertions relating to gabapentin,[3] plaintiff does not now proffer a reason, finance-related or otherwise, for her failure to access mental health services or follow her doctors' orders. See generally Pl.'s Opening Br.; Pl.'s Reply Br. The record contains several treatment notes relating to plaintiff's physical impairments, reflecting that she had no problem obtaining services when she wanted or believed she needed them. See, e.g., Tr. 283-92, 322-34, 336-40; see also Epperson-Nordland v. Colvin, 2013 WL 5774110, *5-7 (D.Or. Oct. 22, 2013) (affirming the ALJ's credibility finding under analogous circumstances). Thus, as the ALJ reasonably concluded, plaintiff's failure to follow or seek treatment belies her hearing statements that her physical and mental impairments render her unable to work.

The ALJ further determined that plaintiff's credibility was

---

[3] According to plaintiff, she stopped taking her fibromyalgia medication, gabapentin, because "she is unemployed, and the Oregon Health Plan does not cover treatment for fibromyalgia." Pl.'s Opening Br. 21. The record does not support plaintiff's assertion. Although she told the Coos County Mental Health Department that "Dr. Shulsigner will not prescribe [it] for her," she generally was given this medication, and ones like it, such as tramodol and flexeril, to treat her alleged fibromyalgia symptoms upon request. Compare Tr. 294, 330, 346, with Tr. 285-86, 293, 302, 327. Indeed, Dr. Shulsinger provided gabapentin to plaintiff "for her fibromyalgia," per her report that "it really helps" and the Coos County Mental Health Department "would not prescribe it." Tr. 327. In addition, plaintiff currently takes "gabapentin three times a day" and there in no evidence in the record reflecting that her financial or insurance situation has changed. Tr. 48. Regardless, even accepting plaintiff's assertion, substantial evidence nonetheless supports the ALJ's conclusion regarding her failure to seek or follow treatment.

Page 11 - OPINION AND ORDER

impaired by her "exaggerat[ion] [of] the extent of her limitations" and inconsistent statements. Tr. 27. A tendency to exaggerate is a legitimate consideration in evaluating a claimant's credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Further, inconsistent statements or actions can serve as a basis for discrediting a claimant's testimony. Burch, 400 F.3d at 680-81. The record before the Court is replete with references to plaintiff's exaggerated and/or inconsistent behaviors. For instance, plaintiff testified that she "rarely leave[s] [her] room" and spends most of her day "laying down [in] bed." Tr. 27, 50, 58. This level of activity is inconsistent with plaintiff's daily conduct. See Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (daily activities may serve as a basis for discrediting a claimant where they "are transferable to a work setting" or "contradict claims of a totally debilitating impairment"). As the ALJ noted, plaintiff is a single mother to a "young son who requires attention and care," and, in 2010, she spent "several months" in Mexico "taking care of her ill mother." Tr. 27, 286, 293-94. In addition, plaintiff informed her medical providers that she cleans, prepares several meals daily, provides childcare for her son and two grandchildren "during the day," and takes public transportation several times per week. Tr. 55, 58, 293-94, 328, 339.

Moreover, as discussed above, Dr. Wahl noted plaintiff's gain-seeking behavior: "[plaintiff was] quite difficult to interview [because] [h]er train of thought seemed to bounce around some but it had a common theme of revealing more and more difficulties . .

. [s]he was constantly adding new ailments and problems." Tr. 293-95; see also Tr. 330 (plaintiff requesting that Dr. Shulsinger "note in her chart" increased reports of "leg pain and spasms" after her disability claim was initially denied). In June 2010, plaintiff stated that "she could walk for between 30 seconds and one minute [but] [t]here is no objective evidence that would indicate she legitimately has such an extreme limitation." Tr. 27; see also Tr. 294 (Dr. Wahl reporting "no noticeable problems with sitting, standing or ambulating"), 303 (Raymond Nolan, M.D., found, upon examination in September 2010, that plaintiff was able "to go from sitting to standing without difficulty[,]" "do a tandem and Romberg[,]" "walk on toes and heals[,]" and "to hop on either foot"; he also observed that her "[g]ait [and] [s]quat rise maneuver [are] normal").

Although plaintiff testified that she developed a stutter due to anxiety and/or as a side-effect of gabapentin, "no stuttering was observed" during the nearly hour-long hearing; in fact, she interacted with several medical providers throughout the adjudication period, most of whom were strangers, and not a single source noted the manifestation of any type of anxiety or speech impediment. Tr. 27, 39-61, 65-68, 283-96, 302-03, 322-40, 344-62. There is also no evidence in the record showing that gabapentin or any other medication could cause stuttering and plaintiff never expressed this alleged side-effect to any medical provider or listed it in her disability paperwork. Similarly, plaintiff remarked at the hearing that she was psychiatrically hospitalized,

Page 13 - OPINION AND ORDER

but, as the ALJ noted, "the hospital did not find her complaints credible because they asked her to leave," such that she was never admitted. Tr. 27, 50-51; see also Tr. 293 (plaintiff reporting to Dr. Wahl that she "call[ed] an ambulance . . . to take her to the ER because she had been walking abound town for 24 hours [and] couldn't quiet down her head," but the hospital would not admit her and instead "asked her to leave").

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

## II.  Lay Witness Testimony

Plaintiff also asserts that the ALJ neglected to provide a germane reason to reject the testimony of her adult son, Mr. Buell. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted). Nevertheless, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citations omitted).

Page 14 - OPINION AND ORDER

In June 2010, Mr. Buell completed a Third-Party Adult Function
Report. Tr. 232-39. Mr. Buell stated that plaintiff engaged in
limited cooking, housework, and shopping, as well as took care of
her eight year old son, watched television, read, and socialized
with family and friends at home "when she is not resting." Tr. 233-
36. He also remarked that she occasionally baby sat his children,
was   independent   in   her   self-care,   drove,   took   public
transportation, and was capable of completing simple tasks. Tr.
233-35, 237. Mr. Buell nonetheless reported that plaintiff
frequently complained, "was always in pain [and] tired," "only
[could] do minimal activity," slept "a lot," "can[not] hold a job,"
was "paranoid in stor[e]s," and did not get along with authority
figures. Tr. 232-39.

The ALJ gave "little weight" to Mr. Buell's third-party
statements because "his account mirrors that of a non-credible
[plaintiff]." Tr. 29. The ALJ also noted that "[h]is description of
[plaintiff's] activities is not fully consistent with his
allegations of her limitations"; he indicated that she is unable to
work, while, at the same time, observing that "his mother helps to
watch her own young son, as well as Mr. Buell's children, is able
to perform light household chores slowly, and socializes with
family and friends when she in not resting." Id. Lay witness
testimony may be disregarded on same basis as claimant's
discredited subjective reports. Valentine v. Comm'r Soc. Sec.
Admin., 574 F.3d 685, 694 (9th Cir. 2009).

Page 15 - OPINION AND ORDER

Mr. Buell's Third-Party Adult Function Report was completed the same day as plaintiff's Adult Function Report and is similar thereto. Compare Tr. 232-39, with Tr. 240-47. As addressed in section I, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom testimony, and these reasons are equally applicable Mr. Buell. Namely, plaintiff's failure to seek and follow medical treatment, inconsistent statements, and tendency to exaggerate, combined with the fact that she was engaging in a relatively wide variety of daily activities, erode the credibility of both her and her son's statements. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted); see also Valentine, 574 F.3d at 694. The ALJ's decision is upheld as to the lay witness testimony.

III. Step Two Finding

Plaintiff argues that the ALJ failed to include fibromyalgia as a medically determinable severe impairment at step two. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it has "more than a minimal effect on the ability to do basic work activities." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation and internal quotations omitted). An impairment is medically determinable if it is diagnosed by an

Page 16 - OPINION AND ORDER

acceptable medical source and based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings"; "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a).

Regarding fibromyalgia, a claimant has a medically determinable impairment "if the physician diagnosed [fibromyalgia] and provides the evidence [described] in section II(A) or section II(B), [which are] generally base[d] on the 1990 American College of Rheumatology (ACR) Criteria." SSR 12-29, available at 2012 WL 3104869. Sections II(A)and II(B) both mandate, in relevant part, "[a] history of widespread pain [that has lasted for a minimum] of 3 months [and] [e]vidence that other disorders that could cause the symptoms or signs were excluded." Id. In addition, section II(A) requires, in terms of signs and symptoms, "[a]t least 11 positive tender points on physical examination[,]" whereas section II(B) necessitates "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions." Id.

The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen, 80 F .3d at 1290. Nonetheless, "[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." Harrison v. Astrue, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).

The medical record before the Court contains multiple references to fibromyalgia. Tr. 49, 285-86, 293, 302-03, 327-30, 333, 336, 345, 348, 352, 357. As the Commissioner observes, however, the only doctor who performed testing consistent with SSR 12-29 or the ACR criteria was Dr. Nolan, who provided the only physical functional evaluation from an examining or treating source; after performing a one-time evaluation of plaintiff and interviewing her, the doctor opined that her presentation was "consistent with a diagnoses of fibromyalgia." Tr. 302-03; see also Def.'s Resp. Br. 7. The remaining evidence relating to this impairment merely reflects plaintiff's subjective reports.[4] See Tr. 49, 285-86, 293, 327-30, 333, 336, 345, 348, 352, 357. Accordingly, in evaluating whether fibromyalgia was a medically determinable severe impairment at step two, the ALJ accurately summarized the legal standard and evidence of record:

> The record contains diagnoses of fibromyalgia. However, the record fails to establish this condition according to the requirements of the [ACR]. Fibromyalgia is a disorder defined by the ACR and the Social Security Administration recognizes it as medically determinable if there are signs that are clinically established by the medical

---

[4] Although plaintiff concludes, without support, that "no fewer than seven different physicians" have diagnosed her with fibromyalgia, she later acknowledges that "she has the medically determinable impairment of fibromyalgia based on Dr. Shulsinger's examinations, findings, and testing, and Dr. Nolan's examination and findings." Pl.'s Reply Br. 1, 4; see also Pl.'s Opening Br. 12. Regarding Dr. Shulsinger, however, plaintiff's argument is unavailing. She asserts that SSR 12-29's signs and symptoms requirement is satisfied based on normal blood tests and imaging studies he obtained in June 2009 and April 2010, yet, as noted above, Dr. Shulsinger's subsequent records are to the contrary: in September 2010, the doctor "refer[red] her to Dr. Cheung" to evaluate "[d]oes she have fibromyalgia and does she have carpal tunnel syndrome?" Tr. 329.

Page 18 - OPINION AND ORDER

record. The signs are primarily the tender points . . . Based on the [ACR's] criteria, I find that fibromyalgia is not a medically determinable impairment in this case because there are no such signs documented in the medical record. The consultative, examining internist, Raymond Nolan, M.D., stated that [plaintiff's] examination was consistent with a fibromyalgia diagnosis but he also noted a number of positive Waddell's signs. Given that his diagnosis was made based on [plaintiff's] self-reported symptoms and responses, and that as discussed further her allegation[s] are not fully credible, I do not credit this diagnosis.

Tr. 22 (internal citations omitted).

Initially, "[a]ny alleged error at step two was harmless because step two was decided in [plaintiff's] favor with regard to other ailments." Mondragon v. Astrue, 364 Fed. Appx. 346, 348 (9th Cir. 2010). Namely, the ALJ determined that plaintiff's degenerative disc disease of the lumbar spine, asthma, carpal tunnel syndrome, hypertension, and obesity were severe at step two, and plaintiff does "not [now] contest the ALJ's finding that [her] mental impairment is non-severe." Tr. 21; Pl.'s Opening Br. 20. Further, in determining plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and cited to the pertinent regulations. Tr. 25. As discussed in sections I and II, this analysis entailed evaluation of plaintiff's and Mr. Buell's allegations of functional limitations relating to fibromyalgia, including pain and fatigue. Tr. 25-29.

The ALJ properly resolved, however, that plaintiff and her son were not fully credible, and, outside of plaintiff's subjective reports, there is no evidence indicating that she is incapable of

Page 19 - OPINION AND ORDER

performing work consistent with the RFC. See Tr. 72-111, 293-95, 302-03; see also Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (only well-supported limitations must be incorporated into the RFC). In fact, after diagnosing her with fibromyalgia, Dr. Nolan opined that plaintiff would "do poorly with inactivity," had no restrictions in "sitting, standing or walking," could lift and carry "10 pounds on a frequent basis," and could perform "an occasional 30 pound lift." Tr. 303. As such, discrediting Dr. Nolan's report allowed the ALJ to formulate a more restrictive RFC.[5] Compare id., with Tr. 24-25. The Court therefore finds that the ALJ's subsequent evaluation, including the RFC assessment, adequately considered the effects of plaintiff's alleged fibromyalgia symptoms. Gray v. Comm'r Soc. Sec. Admin., 365 Fed. Appx. 60, 61 (9th Cir. 2010); see also Burch, 400 F.3d at 682-84 (even assuming the ALJ erred in finding that the claimant's obesity was non-severe, such an error was harmless because step two was resolved in the claimant's favor and the ALJ considered that impairment in formulating the RFC). In other words, even assuming,

---

[5] Plaintiff's contentions regarding Dr. Nolan are somewhat contradictory. On the one hand, she impugns his opinion because "Dr. Nolan did not properly individualize his medical source statement . . . people with fibromyalgia are not fungible; nor are their fibromyalgia-related limitations." Pl.'s Reply Br. 6. On the other hand, she complains because "the ALJ did not account for all of Dr. Nolan's opined limitations in the RFC finding." Id. at 6. In any event, the Court finds that the functional limitations plaintiff selectively identifies in her reply brief are adequately reflected in the RFC, especially in light of the other evidence of record. See id. at 7; see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC).

as plaintiff contends, that the ALJ erred in rejecting Dr. Nolan's opinion to determine that fibromyalgia was not medically determinable at step two, such an error was harmless.[6] See Harrison, 2011 WL 2619504 at *7. The ALJ's step two finding is affirmed.

IV.  Step Three Finding

Plaintiff next contends the ALJ erred at step three by "fail[ing] to consider whether [her] fibromyalgia, in combination with her other impairments, equals Listings 12.04, 12.06, or 14.09D." Pl.'s Opening Br. 15. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Listing 14.09D concerns inflammatory arthritis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D. The only reference to arthritis in the record is plaintiff's uncredible self-reports; there is no

_____

[6] Alternatively, plaintiff argues that the ALJ neglected to adequately develop the medical record in regard to her fibromyalgia. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. Plaintiff simply failed to introduce any medical opinion evidence evincing that she is unable to perform jobs consistent with the RFC due to her fibromyalgia or any other impairment. Plaintiff's failure to carry her burden of proof, however, does not equate to an inadequacy or ambiguity in the record. The ALJ's duty was therefore not triggered.

Page 21 - OPINION AND ORDER

objective medical evidence to support the existence of this impairment. Tr. 290, 336, 345, 348, 352, 357; see also Burch, 400 F.3d at 683 ("[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence") (citation omitted). Moreover, plaintiff does not assert on appeal that the ALJ's step two finding or RFC were erroneous for failing to consider or account for this alleged condition. Pl.'s Opening Br. 11-15, 23-25.

Listing 12.04 pertains to affective disorders - i.e. depression - and listing 12.06 governs anxiety-related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. As the Commissioner observes, plaintiff's argument regarding these listings is "curious" given that she "'does not contest the ALJ's finding that [her] mental impairment is non-severe.'" Def.'s Resp. Br. 20 (quoting Pl.'s Opening Br. 20).

Regardless, to meet or equal one of these listings, the claimant must demonstrate, in relevant part: (1) at least one marked impairment in activities of daily living, social functioning, or concentration, persistence, or pace; or (2) repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 14.09D; see also Pl.'s Opening Br. 10, 16. As plaintiff acknowledges, the only evidence to support the requisite degree of limitation is from "the testimony of both Plaintiff and her son"; however, the ALJ properly rejected this

Page 22 - OPINION AND ORDER

evidence. Pl.'s Opening Br. 16; see also Tr. 72-111, 293-95, 302-03. Plaintiff therefore failed to establish that her impairments, either singly or in combination, meet or equal listings 12.04, 12.06, or 14.09D. The ALJ's step three finding is affirmed.

V.    RFC Assessment and Step Four and Five Findings

Finally, plaintiff argues that the ALJ's RFC and step four and five findings are erroneous because they do not account for "limitations established by [her] credible allegations and the corroborative testimony of [her] son," including "limitations flowing from [her] fibromyalgia." Pl.'s Opening Br. 23. The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock, 240 F.3d at 1163-65.

As discussed above, the statements of plaintiff and Mr. Buell were appropriately discredited by the ALJ; there is no indication, outside of this evidence, that plaintiff suffers from functional limitations associated with her fibromyalgia beyond those already assessed in the RFC. See Tr. 72-111, 293-95, 302-03. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit.

Page 23 - OPINION AND ORDER

Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Stubbs-Danielson, 539 F.3d at 1175-76. The ALJ's RFC and step four and five findings are upheld.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _10th_ day of August 2014.


_____
Ann Aiken
United States District Judge

Page 24 - OPINION AND ORDER